**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-10677

_____

UNITED STATES OF AMERICA,

                                Plaintiff-Appellee,

VERSUS

DANNY MOORE CURBO,

                                Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:98-CR-31-1-Y)

_____

April 7, 1999

Before REAVLEY, POLITZ, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Danny Curbo appeals his sentence. Finding no error in the decision to increase his offense level by two, we affirm.


I.

Curbo was charged with willful failure to file an income tax return for 1991, a violation of 26 U.S.C. § 7203, and with fraudulent failure to disclose an event affecting his right to

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

receive Social Security payments, a violation of 42 U.S.C. § 408(a)(4). He pleaded guilty.

## II.

Curbo began receiving disability benefits in 1977. At the time he was declared disabled, the Social Security Administration ("SSA") advised that he must report any other income he received while receiving disability payments. The Social Security regulations permitted him to receive income from self-employment as long as his gross income remained below $200 per month and his total net income in the tenth month of self-employment did not exceed $500.

In about 1990, Curbo, who says he "had been laying around doing nothing for ten, twelve years" and wanted to "make a little spending money," began operating Southwest Distributing Company, which screen-printed and distributed caps, tee shirts, pens, and other items bearing business logos. He made more than a little spending money: In 1991, he deposited gross receipts of over $450,000 and posted a net income of more than $62,000. Because he neglected to mention his business success to the SSA, he also received disability payments totaling over $12,000 in 1991.

Curbo stipulated that he "acted willfully and with the intent fraudulently to conceal receiving payments from the [SSA] in a greater amount then [sic] was due to him" and "willfully failed and refused to file a[n] [income tax] return" for 1991, despite the fact that he "knew that he had income of more than $450,000 in tax

2

year 1991, and was required by law to file a tax return." The district court increased by two the base offense level because of Curbo's failure to report income obtained through criminal activity.[1]

### III.

The provision applicable to the offense of failure to file tax returns directs courts to increase the offense level by two "[i]f the defendant failed to report or correctly identify the source of income exceeding $10,000 in any year from criminal activity." U.S.S.G. § 2T1.1(b)(1). Interpreting this provision, we have explained that "[a] defendant who fails to report more than $10,000 a year in criminal income is punished more harshly than one who fails to report a comparable amount of legitimate income." *Haltom*, 113 F.3d at 44.

Curbo contends that subsection (b)(1) is not applicable because his income was not generated from criminal activity and

---

[1] In sentencing Curbo, the district court grouped together the two counts pursuant to U.S.S.G. § 3D1.2(b) (providing for the grouping of "closely related counts"). Curbo made no objection, and the propriety of the grouping is thus not before us.

Section 3D1.3(a) of the Sentencing Guidelines explains that when counts are grouped together, the offense level for the group should be that for the most serious of the counts comprising the group, *i.e.*, the highest level of the counts in the group. In Curbo's case, the base offense level for the Social Security violation was six, *see* U.S.S.G. § 2F1.1(a), and the base offense level for the failure to file an income tax return was 14. (The total loss of tax revenue to the government resulting from Curbo's failure to file was $87,404, and the base offense level for such a revenue loss is 14. *See* U.S.S.G. § 2T4.1.) Hence, the district court properly referred to the guidelines provisions on tax evasion in computing Curbo's sentence, and it correctly started with a base offense level of 14. The court then considered the "Specific Offense Characteristics," as the guidelines provisions on tax evasion prescribe, determining that a two-level increase was appropriate under § 2T1.1(b)(1) because over $10,000 of Curbo's unreported income had come from criminal activitySSSocial Security fraud.

because the criminal activity to which the subsection refers is overt conduct, such as drug trafficking, prostitution, illegal gambling, "or some other nefarious activity." We disagree.

While the money Curbo collected from his screen-printing business may not have been derived "from criminal activity," that money was not the only income Curbo drew in 1991. By his own admission, he collected over $12,000 from the SSA by fraudulently concealing the fact that his net income exceeded $500 for a ten-month period. He collected this money only because he committed a crimeSShe knowingly failed to disclose information affecting his right to continued benefits. Such knowing concealment is a felony under 42 U.S.C. § 408(a).

For purposes of § 2T1.1(b)(1), "'[c]riminal activity' means any conduct constituting a criminal offense under federal, state, local, or foreign law." U.S.S.G. § 2T1.1(b)(1), application note 3. The fact that Curbo's offense was not an overt act is irrelevant. Failure to perform a legal duty may be a criminal offense and may therefore constitute "criminal activity" for purposes of § 2T1.1(b)(1).

Curbo maintains that "the income [he] failed to report was not the Social Security payments . . . [but was] derived from the perfectly legitimate activity of retailing baseball caps and other items." He apparently is arguing that the only income he had a duty to report was that derived from his business; he had no duty to report his Social Security benefits, so his sentence should not be increased for failing to report income from the criminal

4

activity of Social Security fraud.

There are two problems with this argument. First, § 2T1.1(b)(1) says not that the defendant must have had an independent duty to report the income derived from criminal activity, but that "[i]f the defendant failed to report . . . income exceeding $10,000 in any year from criminal activity," a two-level increase is required. Curbo made over $12,000 in 1991 from Social Security fraudSSa crimeSSand he failed to report that income. The plain text of § 2T1.1(b)(1) thus requires a two-level increase even if Curbo had no independent duty to report his Social Security benefits.

Moreover, Curbo *did* have such a duty. Had the benefits been legally obtained, they would have been included in his gross income (and therefore subject to the reporting requirement) only as specified in 26 U.S.C. § 86 (stating the circumstances under which a portion of Social Security benefits may be included in the recipient's gross income). But Curbo *fraudulently* obtained the Social Security payments. When such payments are received through fraud, they constitute gross income and must therefore be reported.[2] Hence, Curbo is wrong in claiming that the only income he failed to report was income derived from legitimate economic activity, and the district court thus correctly concluded that a two-level upward adjustment was appropriate.

---

[2] *See* 26 C.F.R. § 1.61-14 (1990) ("Illegal gains constitute gross income."); *James v. United States*, 366 U.S. 213, 219 (1961) (holding that illegally obtained funds are included as gross income); *United States v. Guerrerio*, 670 F. Supp. 1215, 1225-26 (S.D.N.Y. 1987) (stating that Social Security benefits obtained by fraud are fully taxable).

AFFIRMED.